# United States Court of Appeals for the Federal Circuit

*Revised: August 4, 2009

2008-1229

TOUCHCOM, INC.
and TOUCHCOM TECHNOLOGIES, INC.,

Plaintiffs-Appellants,

v.

BERESKIN & PARR
and H. SAMUEL FROST,

Defendants-Appellees.


Sheron Korpus, Kasowitz, Benson, Torres & Friedman, LLP, of New York, New York, argued for plaintiffs-appellants. With him on the brief was Michael S. Shuster.

G. Luke Ashley, Thompson & Knight L.L.P., of Dallas, Texas, argued for defendants-appellees. With him on the brief were John H. Martin, J. Michael Heinlen; and Peter E. Strand, Shook, Hardy & Bacon L.L.P., of Washington, DC.

Appealed from: United States District Court for the Eastern District of Virginia

Senior Judge James C. Cacheris

* Correction of title

# United States Court of Appeals for the Federal Circuit

2008-1229

TOUCHCOM, INC.
and TOUCHCOM TECHNOLOGIES, INC.,

Plaintiffs-Appellants,

v.

BERESKIN & PARR
and H. SAMUEL FROST,

Defendants-Appellees.

Appeal from the United States District Court for the Eastern District of Virginia in Case No. 1:07-CV-114, Senior Judge James C. Cacheris.

_____

DECIDED:  August 3, 2009

_____

Before LOURIE, GAJARSA, and PROST, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> LOURIE.  Dissenting opinion filed by <u>Circuit Judge</u> PROST.

LOURIE, <u>Circuit Judge</u>.

Touchcom, Inc. and Touchcom Technologies, Inc. (collectively "Touchcom") appeal from the final judgment of the United States District Court for the Eastern District of Virginia dismissing Touchcom's malpractice suit against the law firm of Bereskin & Parr ("B&P") and attorney H. Samuel Frost.  <u>Touchcom, Inc. v. Bereskin & Parr</u>, No. 07-CV-114, slip op. at 1 (E.D. Va. Feb. 4, 2008).  The district court dismissed Touchcom's suit for lack of personal jurisdiction.  Because the court erred in determining that it did

not have personal jurisdiction over B&P and Frost, we reverse.

BACKGROUND

Peter Hollidge, one of the principals of Touchcom, Inc., invented aspects of a pump system that was designed to allow a user to control the system via a central processing unit. In 1987, he retained B&P, a Canadian intellectual property law firm, and specifically H. Samuel Frost, a partner in B&P's Mississauga office, to file and prosecute the necessary patent applications. Hollidge sought patent protection for his invention in Canada, the United States, and various European countries. B&P and Frost entered into an oral agreement with Hollidge regarding the patent prosecution.

Frost prepared a Canadian patent application on Hollidge's invention that was filed on August 6, 1987.[1] The Canadian application, which ultimately issued as Canadian Patent 1,301,929, contained the complete source code for Hollidge's invention.[2] Can. Patent No. 1,301,929 (filed Aug. 6, 1987) (issued May 26, 1992). That source code, particularly its omission from a subsequent patent application in the United States, is at the heart of Touchcom's present action against B&P and Frost (collectively, "appellees").

To obtain patent protection on Touchcom's invention outside of Canada, Frost opted to file under the Patent Cooperation Treaty ("PCT"). The PCT provides a unified procedure for filing a single patent application in multiple countries. Under the PCT process, an applicant first files a patent application in one participating country. The

---

[1] A second attorney, Robert Wilkes, assisted Frost in prosecuting the relevant patents in this case. Wilkes is not a defendant in this action.

[2] On December 7, 1987, Hollidge assigned his invention to Touchcom. For ease of reference, we will refer to the invention as Touchcom's from this point forward.

International Bureau of the World Intellectual Property Organization ("WIPO"), on request, then transmits copies of the application to domestic national patent offices selected by the patentee. Those filings are referred to as "national phase entries."

On August 5, 1988, Frost filed a PCT application in the United Kingdom covering Touchcom's invention. That PCT application, unlike the Canadian application, did not contain the complete computer source code for the invention; a portion of the source code was unintentionally omitted. On December 29, 1989, WIPO transmitted and filed a national phase application in the United States Patent and Trademark Office ("USPTO"), which is located in Alexandria, Virginia. The U.S. application was identical to the British application; it also lacked the omitted portion of the computer source code.

In order to perfect the U.S. application, Frost transmitted various documents to the USPTO, including a transmittal letter, a cover letter that outlined applicable fees, and a declaration of inventorship executed by Hollidge. Additionally, Frost submitted a preliminary amendment (not related to the source code), a petition to make special, and small entity declarations signed by Hollidge and Touchcom. It is not alleged that Frost, or any other member of B&P, physically entered Virginia to prosecute the Touchcom patent. On June 25, 1991, U.S. Patent 5,027,282 (filed Dec. 28, 1988), claiming the interactive pump system, issued to Touchcom.

Several years after obtaining its U.S. patent, Touchcom filed two patent infringement actions in the U.S. District Court for the Eastern District of Texas. In one of those actions, the district court held that Touchcom's patent was invalid for indefiniteness. Touchcom, Inc. v. Dresser, Inc., 427 F. Supp. 2d 730, 737 (E.D. Tex. 2005). The court premised much of its finding of indefiniteness on the absence of

portions of the source code from Touchcom's patent.  Id.

On August 25, 2006, Touchcom filed a malpractice action against appellees in the Superior Court for the District of Columbia.  Appellees subsequently removed the case to the U.S. District Court for the District of Columbia.  On October 3, 2006, Touchcom voluntarily dismissed the D.C. action and, on the following day, re-filed the case in the circuit court of Arlington County, Virginia.

On January 30, 2007, appellees removed the Arlington County action to the U.S. District Court for the Eastern District of Virginia.  Shortly thereafter, appellees moved to dismiss the complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  Touchcom moved to remand the case to state court for lack of subject matter jurisdiction.  The district court then stayed the proceedings pending our decision in Air Measurement Technologies, Inc. v. Akin Gump Strauss Hauer & Feld, 504 F.3d 1262 (Fed. Cir. 2007).  That decision was entered on October 15, 2007, and the district court lifted its stay one month later.

On February 4, 2008, the district court ruled on all pending motions, including appellees' motion to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.  Touchcom, Inc. v. Bereskin & Parr, No. 07-CV-114, slip op. at 31 (E.D. Va. Feb. 4, 2008).  As a preliminary matter, the court, relying on our decisions in Air Measurement and Immunocept, LLC v. Fulbright & Jaworski, LLP, 504 F.3d 1281 (Fed. Cir. 2007), found that it possessed subject matter jurisdiction over Touchcom's claim. Touchcom, No. 07-CV-114, slip op. at 8-18.  Thus, the court denied B&P and Frost's motion to remand the case to state court.  Id. at 17-18.  The court then granted Touchcom's 12(b)(2) motion and dismissed the case for lack of personal jurisdiction.  Id.

at 18-30. In doing so, the court focused its analysis on the particular requirements of the Virginia long-arm statute and concluded that Touchcom had failed to plead facts sufficient to satisfy those requirements. Id. at 30 ("[T]he Court does not possess specific jurisdiction over Defendants within the meaning of Virginia's long-arm statute.").

Touchcom timely appealed the district court's judgment. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

DISCUSSION

Touchcom argues that the district court erred when it found that it lacked personal jurisdiction over appellees. Touchcom contends that, contrary to the court's finding, appellees' contacts with the Commonwealth of Virginia were sufficient to satisfy the Virginia long-arm statute and establish specific jurisdiction over appellees. In support of that claim, Touchcom alleges that appellees transacted business in Virginia, contracted to supply services or things in Virginia, and caused tortious injury in Virginia by an act or omission outside of Virginia. Furthermore, Touchcom claims that appellees possess the required "minimum contacts" with Virginia such that exercise of personal jurisdiction over appellees would not be inconsistent with notions of fair play and substantial justice.

In response, appellees urge us to affirm the district court's finding that it lacked specific jurisdiction over appellees. Appellees claim that Virginia's long-arm statute does not confer jurisdiction over Frost or B&P because the alleged malpractice does not arise out of business transacted in Virginia or from the transmission of documents to the USPTO. Appellees further argue that the Virginia long-arm statute does not establish jurisdiction because the alleged malpractice was not a tortious act committed in Virginia.

Even if the Virginia long-arm statute conferred jurisdiction in this case, and appellees claim it does not, appellees argue that finding personal jurisdiction in this case would violate due process.

The question presented in this case is one of first impression, viz., whether the act of filing an application for a U.S. patent at the USPTO is sufficient to subject the filing attorney to personal jurisdiction in a malpractice claim that is based upon that filing and is brought in federal court. For the reasons discussed below, we conclude that it is.

A.    Standard of Review

We review whether the district court had personal jurisdiction over appellees under a de novo standard. 3D Sys., Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1376 (Fed. Cir. 1998). "While we defer to the interpretation of a state's long-arm statute given by that state's highest court, particularly whether or not the statute is intended to reach the limit of federal due process, when analyzing personal jurisdiction for purposes of compliance with federal due process, Federal Circuit law, rather than regional circuit law, applies." Id. at 1377 (citations omitted).

Because the district court decided appellees' pretrial personal jurisdiction motion without conducting a hearing, Touchcom must make only a prima facie showing that the district court had personal jurisdiction over appellees in order to succeed on appeal. Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1349 (Fed. Cir. 2003). In evaluating whether Touchcom has met its burden, we accept the uncontroverted allegations in Touchcom's complaint as true and resolve any factual conflicts in Touchcom's favor. Id.

Courts may exercise personal jurisdiction over defendants on either of two bases: general or specific jurisdiction. Synthes (U.S.A.) v. G.M. dos Reis Jr. Ind. Com.

de Equip. Medico, 563 F.3d 1285, 1297 (Fed. Cir. 2009). General jurisdiction "requires that the defendant have 'continuous and systematic' contacts with the forum state and confers personal jurisdiction even when the cause of action has no relationship with those contacts." Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1200 (Fed. Cir. 2003) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984)). Because Touchcom does not appeal the district court's conclusion that it lacked general jurisdiction, we will limit our discussion to specific jurisdiction.

B.      Specific Jurisdiction

Analysis of personal jurisdiction in federal court begins with Rule 4 of the Federal Rules of Civil Procedure. Synthes, 563 F.3d at 1293 (citing Fed. R. Civ. P. 4; Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987)). Rule 4(k)(1)(A) states that service of process establishes jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Pursuant to Rule 4(k)(1)(A), a federal court addressing personal jurisdiction over a defendant approaches such an inquiry by analyzing the long-arm statute and governing principles of the forum state. See id.; see also CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 292 (4th Cir. 2009) ("[A] federal court assessing such a jurisdictional issue borrows and applies the applicable long-arm statute and governing principles from the forum state."). Rule 4(k)(2), on the other hand, establishes jurisdiction over a defendant when process has been served and three requirements are met: "(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process."

<u>Synthes</u>, 563 F.3d at 1294.

The district court, in deciding this case, found that Rule 4(k)(1)(A) did not permit the exercise of jurisdiction over appellees. The court did not examine whether Rule 4(k)(2) permitted the exercise of personal jurisdiction over appellees. The court's reason for ignoring Rule 4(k)(2) was sound: Touchcom did not allege that that rule permitted the exercise of jurisdiction. However, on appeal, Touchcom does argue the relevance of Rule 4(k)(2), and we are entitled to consider it. <u>See</u> Appellant's Br. at 32 n.6.

Appellees argue that Touchcom has waived any argument based upon that rule because it is raising the argument for the first time on appeal. However, Touchcom correctly points out that it did not have the opportunity to argue Rule 4(k)(2) to the district court because the court ruled on subject matter jurisdiction, and thus whether the case arose under federal law, at the same time that it ruled on personal jurisdiction. Indeed, at the district court Touchcom argued that its claims did not arise under federal law. Because Rule 4(k)(2) requires that a claim arise under federal law, Touchcom was not in a position to argue Rule 4(k)(2) until the present appeal. We therefore will consider Touchcom's 4(k)(2) argument. There was no waiver. <u>See</u> <u>ISI Int'l, Inc. v. Borden Ladner Gervais LLP</u>, 256 F.3d 548, 551-52 (7th Cir. 2001) (ruling on Rule 4(k)(2) even though it was not argued at the district court or appellate level).

For the reasons stated below, we agree with the district court's findings that under a traditional 4(k)(1)(A) analysis, the court lacked personal jurisdiction over appellees. However, we find that under a Rule 4(k)(2) analysis, exercise of jurisdiction over appellees is permitted. We will analyze each rule in turn.

1.    Rule 4(k)(1)(A)

An inquiry into personal jurisdiction involves two steps. Genetic Implant Sys., Inc. v. Core-Vent Corp., 123 F.3d 1455, 1458 (Fed. Cir. 1997) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-76 (1985)). We must first decide whether the forum state's long-arm statute permits service of process on appellees. Id. We must then determine whether the assertion of personal jurisdiction in accordance with that long-arm statute would violate the U.S. Constitution's guarantee of due process. Id.

In this case, the two-step personal jurisdiction inquiry coalesces into a single inquiry. The Virginia long-arm statute has been interpreted by the Supreme Court of Virginia to generally authorize the exercise of jurisdiction to the full extent permitted by the U.S. Constitution. Danville Plywood Corp. v. Plain & Fancy Kitchens, Inc., 238 S.E.2d 800, 802 (Va. 1977). Thus, satisfaction of Virginia's requirements for service of process is satisfied when due process is satisfied. Stated differently, the statutory and constitutional inquiries coalesce into the question whether due process is satisfied by the court's exercise of personal jurisdiction over appellees. Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, 229 F.3d 448, 450 (4th Cir. 2000).

The Supreme Court articulated the test for determining whether the exercise of jurisdiction comports with due process in International Shoe Co. v. Washington, 326 U.S. 310 (1945). We have interpreted International Shoe and its progeny as creating a three-pronged approach for determining whether the exercise of jurisdiction is permitted under the Fifth Amendment. Synthes, 563 F.3d at 1297. First, the defendant must have "minimum contacts" with the forum state. Id.; Int'l Shoe, 326 U.S. at 316. In the context of finding specific jurisdiction, the "minimum contacts" prong requires a showing

that the defendant has "purposefully directed his activities at residents of the forum." Synthes, 563 F.3d at 1297 (citing Elecs. for Imaging, 340 F.3d at 1350). The second prong requires that "the claim arises out of or relates to the defendant's activities with the forum." Id. The third prong of the due process test is a showing that "assertion of jurisdiction is reasonable and fair." Id.

The "constitutional touchstone" of a due process inquiry is determining whether the defendant "purposefully established 'minimum contacts' in the forum state." Burger King, 471 U.S. at 474 (quoting Int'l Shoe, 326 U.S. at 316). Thus, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [ ], thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). Contacts with the forum that are "random", "fortuitous," or "attenuated," or that result from the "unilateral activity of another party or third person" are not sufficient to establish personal jurisdiction. Burger King, 471 U.S. at 475.

In this case, appellees' contacts with Virginia are limited to the filing of a patent application at the USPTO and subsequent communications and filings made in connection with that application. Appellees never travelled to Virginia in connection with this patent and thus have not contributed to or benefited from Virginia's restaurants, hotels, airports, or other commercial establishments in its prosecution of the patent. Appellees have not directed any of their activities at issue in this case towards residents of Virginia, nor have they engaged in business negotiations with any Virginia residents. Appellees' contacts are limited to long-distance communications with a federal agency that happens to be located in Virginia primarily because of the state's proximity to our

nation's capital. While appellees made such contacts purposefully, and thus those contacts are neither random nor fortuitous, see id., the contacts do not indicate a purposeful availment of the "privilege of conducting business within" Virginia. Finally, they have engaged in no conduct in Virginia that concerns the interests of Virginia, such as protecting its citizens, businesses, or property. For purposes of this lawsuit, appellees do not therefore possess the constitutional "minimum contacts" with Virginia, Hanson, 357 U.S. at 253, are not subject to jurisdiction in Virginia's courts of general jurisdiction, and are therefore not subject to jurisdiction in federal court in Virginia under a Rule 4(k)(1)(A) analysis.[3]

### 2. Rule 4(k)(2)

Rule 4(k)(2), entitled "Federal Claim Outside State-Court Jurisdiction," states, in relevant part: "For a claim that arises under federal law, serving a summons . . . establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). Thus, for a court to exercise personal jurisdiction over a defendant under that rule, the plaintiff's claim must arise under federal law, the defendant must not be subject to jurisdiction in any state's courts of general jurisdiction, and exercise of jurisdiction must comport with due process. Synthes, 563 F.3d at 1293-94.

### a. Claim Arises Under Federal Law

This case was removed to the United States District Court for the Eastern District

---

[3]     This malpractice suit, where the patent owner is the plaintiff, is not a case to which 35 U.S.C. § 293 applies, where jurisdiction over a foreign patentee is provided for proceedings affecting the patent.

of Virginia. Appellees argued that the case raised a federal question. <u>Touchcom</u>, No. 07-CV-114, slip op. at 6 (arguing subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338). Thus, for the district court to have possessed subject matter jurisdiction over Touchcom's claim, the claims must necessarily have arisen under federal law. <u>See</u> 28 U.S.C. § 1331 (conferring original jurisdiction to federal district courts over "all civil actions <u>arising under</u> the Constitution, laws, or treaties of the United States" (emphasis added)); 28 U.S.C. § 1338 (stating that U.S. district courts possess subject matter jurisdiction over civil actions that "<u>aris[e] under</u> any Act of Congress relating to patents" (emphasis added)).

We agree with the district court that it possessed subject matter jurisdiction over this case under 28 U.S.C. § 1338. As a consequence of that decision, Touchcom's claims necessarily arise under federal law for purposes of Rule 4(k)(2). The Supreme Court has held that § 1338 jurisdiction extends to any case "in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded complaints." <u>Christianson v. Colt Indus. Operating Corp.</u>, 486 U.S. 800, 809 (1988). In <u>Immunocept</u>, we held that a malpractice claim necessarily involved a substantial question of patent law because the claim required the court to determine the scope of the patent claims at issue. 504 F.3d at 1284-85. We noted in <u>Immunocept</u> that "state claims that involve a comparison of patent applications and the proof of invalidity" are within the jurisdiction of federal district courts under 28 U.S.C. § 1338. <u>Id.</u> at 1285 (citations omitted).

Just as in <u>Immunocept</u>, this case concerns state malpractice claims that involve analysis of patent claims and proof of invalidity. Touchcom will be required to show that, had appellees not omitted a portion of the source code from its application, the resulting U.S. patent would not have been held invalid. <u>See</u> <u>Stewart v. Hall</u>, 770 F.2d 1267, 1269-70 (4th Cir. 1985) (stating that Virginia law requires malpractice plaintiffs to prove "but for" causation); <u>White v. Morano</u>, 452 S.E.2d 856, 858 (Va. 1995) (stating that "but for" causation is proven by conducting a "trial within a trial"). In this case, such a showing necessarily requires an analysis of patent validity. Thus, following <u>Immunocept</u> and <u>Christianson</u>, we agree with the district court that the court possessed subject matter jurisdiction over Touchcom's claims. Because we agree with the district court that Touchcom's claims arise under federal law, the first requirement of Rule 4(k)(2) has been met.

### b.    Not Subject to Jurisdiction in Any State

The second requirement of Rule 4(k)(2), that the defendant is not subject to the jurisdiction of any state's courts of general jurisdiction, poses practical difficulties for district courts. <u>See</u> <u>Synthes</u>, 563 F.3d at 1294 ("[D]etermining the second Rule 4(k)(2) requirement—that the defendant not be subject to personal jurisdiction in any state's courts of general jurisdiction (the 'negation requirement')—poses practical difficulties for a district court."). That is because the requirement either places a burden on the plaintiff of proving a negative many times over, <u>viz.</u>, that defendant is <u>not</u> subject to jurisdiction in any of the fifty states, or requires that the defendant concede its potential amenability to suit in federal court (by denying its amenability to suit in any state court) or submitting to jurisdiction in a particular state, an uninviting choice. <u>See</u> <u>United States</u>

<u>v. Swiss Am. Bank, Ltd.</u>, 191 F.3d 30, 40-41 (1st Cir. 1999). In response, the various circuit courts have developed different methods for determining whether this requirement of Rule 4(k)(2) is met. <u>See</u> <u>Synthes</u>, 563 F.3d at 1294-95 (describing the various approaches used among the different circuits). We have not previously had occasion to address our approach to this issue. <u>Id.</u> at 1296 (holding that Rule 4(k)(2) permitted jurisdiction, yet leaving for another day the determination of which party bears the burden of proof regarding the second requirement of that rule and what that party is required to prove).

Rule 4(k)(2) closed a loophole that existed prior to the 1993 amendments of the Federal Rules of Civil Procedure.[4] Before the adoption of Rule 4(k)(2), a non-resident defendant who did not have "minimum contacts" with any individual state sufficient to support exercise of jurisdiction, but did have sufficient contacts with the United States as a whole, could escape jurisdiction in all fifty states. Rule 4(k)(2) was adopted to ensure that federal claims will have a U.S. forum if sufficient national contacts exist. <u>See</u> <u>Synthes</u>, 563 F.3d at 1295 (citing Fed. R. Civ. P. 4(k)(2) advisory committee notes

---

[4]    The advisory committee notes to the 1993 amendment state:

> Under the former rule, a problem was presented when the defendant was a non-resident of the United States having contacts with the United States sufficient to justify the application of United States law and to satisfy federal standards of forum selection, but having insufficient contact with any single state to support jurisdiction under state longarm legislation or meet the requirements of the Fourteenth Amendment limitation on state court territorial jurisdiction. In such cases, the defendant was shielded from the enforcement of federal law by the fortuity of a favorable limitation on the power of state courts, which was incorporated into the federal practice by the former rule. In this respect, the revision responds to the suggestion of the Supreme Court made in <u>Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.</u>, 484 U.S. 97, 111 (1987).

Fed. R. Civ. P. 4(k)(2) advisory committee notes to 1993 amendment.

to 1993 amendment).

In dealing with the second requirement of Rule 4(k)(2), the Fifth, Seventh, Ninth, Eleventh, and DC Circuits have adopted an approach that places the burden on the defendant.  See Oldfield v. Pueblo de Bahia Loria, S.A., 558 F.3d 1210, 1219 n.22 (11th Cir. 2009); Holland Am. Line Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 461 (9th Cir. 2007); Mwani v. bin Laden, 417 F.3d 1, 11 (D.C. Cir. 2005); Adam v. Unione Mediterranea di Sicurta, 364 F.3d 646, 651 (5th Cir. 2004); ISI Int'l, 256 F.3d at 552. Under that approach, a court is entitled to use Rule 4(k)(2) to determine whether it possesses personal jurisdiction over the defendant unless the defendant names a state in which the suit can proceed.  As articulated by the Seventh Circuit:

> A defendant who wants to preclude the use of Rule 4(k)(2) has only to name some other state in which the suit could proceed.  Naming a more appropriate state would amount to a consent to personal jurisdiction there. . . . If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other state where suit is possible, then the federal court is entitled to use Rule 4(k)(2).  This procedure makes it unnecessary to traipse through the 50 states, asking whether each could entertain the suit.

ISI Int'l, 256 F.3d at 552 (citations omitted).

The First Circuit has a different approach.  Under that circuit's approach, a plaintiff must certify that defendant is not subject to jurisdiction in any state, at which point the burden shifts to the defendant to refute the plaintiff's certification.  Swiss Am. Bank, 191 F.3d at 41.  The First Circuit's approach "presents practical difficulties for a plaintiff who prefers to plead in the alternative that the defendant is subject to suit under a state's long-arm statute."  Synthes, 563 F.3d at 1294.  The Fourth Circuit has seemingly followed the First Circuit's approach.  See Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory", 283 F.3d 208, 215 (4th Cir. 2002) (citing the First

Circuit's <u>Swiss Am. Bank.</u> decision in deciding whether the second requirement of Rule 4(k)(2) was met).

We conclude that, in federal cases, the purposes of Rule 4(k)(2) are best achieved when the defendant is afforded the opportunity to avoid the application of the rule only when it designates a suitable forum in which the plaintiff could have brought suit. The advisory committee was concerned with defendants escaping jurisdiction in U.S. federal courts while still having minimum contacts with the United States. If we were to adopt the First Circuit's requirement that a plaintiff must prove that a defendant was not subject to jurisdiction in any of the fifty states, we would be allowing some defendants to escape jurisdiction due to the excessive burden involved in making such a showing. It is difficult to prove a negative. Furthermore, that approach would not allow plaintiffs to plead jurisdiction in the alternative under Rule 4(k)(1)(A) and Rule 4(k)(2). Requiring a plaintiff to certify that a defendant is not subject to jurisdiction in any state forecloses an argument by the plaintiff that the defendant is subject to jurisdiction in the state in which the court resides. <u>See</u> <u>Base Metal Trading</u>, 283 F.3d at 215 (noting that the First Circuit's certification requirement does not permit litigants to adopt "inconsistent alternate positions in a case"). An approach that forecloses alternative arguments appears to conflict with the Federal Rules of Civil Procedure. <u>See</u> Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single court or defense or in separate ones.").

We conclude that the approach articulated by the Seventh Circuit is more in tune with the purposes behind the enactment of Rule 4(k)(2). We agree with the Seventh

Circuit that the "[c]onstitutional analysis for each of the 50 states" required under the First Circuit's approach is undesirable and "eminently avoidable by allocating burdens sensibly." ISI Int'l, 256 F.3d at 552. Thus, we agree with the Seventh Circuit's conclusion that if "the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." Id.[5]

Turning now to the facts of this case, the district court found, and we have confirmed, that appellees are not subject to Virginia's courts of general jurisdiction. See sec. B1, supra. Appellees have not named another state in which they would be subject to jurisdiction. All of the appellees' contacts with the United States that have been alleged by Touchcom occurred at the USPTO in Virginia. There is no record evidence of any of the contacts relating to Touchcom's claims occurring in any other state. Thus, we find that for purposes of Rule 4(k)(2) Touchcom has made a prima facie showing that appellees are not subject to the jurisdiction of any state's courts of general jurisdiction.

As noted above, due to the procedural posture of this appeal, Touchcom is required only to make a prima facie case of personal jurisdiction in order to prevail. Elecs. for Imaging, 340 F.3d at 1349. We recognize that because the case was decided on summary judgment and Rule 4(k)(2) was not argued before the district court, there

___

[5] Because Touchcom argued both rule 4(k)(1)(A) and Rule 4(k)(2), and because we have dealt with both of those rules, we need not decide whether a Rule 4(k)(2) analysis can only be conducted after a Rule 4(k)(1)(A) analysis, as required by the First, Fourth, and Sixth Circuits. Swiss Am. Bank, 191 F.3d at 37; CFA Inst., 551 F.3d at 292; Fortis Corp. Ins. v. Viken Ship Mgmt., 450 F.3d 214, 218 (6th Cir. 2006); see also Synthes 563 F.3d at 1295 (leaving for another day the question whether 4(k)(1)(A) analysis must precede 4(k)(2) analysis).

may be evidence of appellees' contacts with states other than Virginia that did not form part of the record. If, on remand, the district court determines that appellees are subject to personal jurisdiction in another state, or if appellees designate such a forum, the district court is welcome to transfer the case as it sees fit. However, if such a showing is not made, Touchcom has met its burden under Rule 4(k)(2) of demonstrating that appellees are not subject to the jurisdiction of any state's courts of general jurisdiction.

### c. Due Process

Just as in the due process analysis under Rule 4(k)(1)(A), in deciding whether due process permits the exercise of personal jurisdiction under Rule 4(k)(2), we must consider whether "(1) defendant has purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to the defendant's activities with the forum, and (3) assertion of personal jurisdiction is reasonable and fair." Synthes, 563 F.3d at 1297. However, the due process analysis under Rule 4(k)(2) differs somewhat from the analysis under Rule 4(k)(1), which we analyzed previously. Rule 4(k)(2) "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." Id. at 1295. Thus, while the test of specific jurisdiction under 4(k)(2) involves the same steps as under 4(k)(1), we must consider appellees "contacts with the nation as a whole." Id. at 1296.

Applying the first factor of our three-factor test to this case, we conclude that appellees purposefully directed their activities at parties in the United States and thus had "minimum contacts" sufficient to satisfy due process. Appellees entered into a contractual agreement to obtain U.S. patent protection for Touchcom. That agreement contemplated and resulted in appellees seeking and obtaining a U.S. patent. In doing

so, appellees were required to be registered patent agents, submit documents to the USPTO, and perfect their client's patent application before that agency. It stands to reason that one who has sought and obtained a property interest from a U.S. agency has purposefully availed itself of the laws of the United States.

Appellees argue that because the U.S. patent application at issue in this case originated as a PCT application, their contacts with the United States are not sufficient to subject them to personal jurisdiction in federal court. However, the procedural route by which the patent was obtained is irrelevant. Appellees ultimately obtained a U.S. patent for their client by availing themselves of the only agency authorized to issue such patents, which is, not surprisingly, located in the United States. Appellees were required to submit documents to the USPTO to perfect the U.S. patent application and appellees thus have had minimum contacts with the United States. That appellees never physically entered the country in doing so is not determinative of minimum contacts. See Burger King, 471 U.S. at 476 (finding that jurisdiction was appropriate where defendant had not physically entered the state). Defendant purposefully directed its activities at the United States. Therefore, appellees' decision to employ the PCT process, rather than directly filing a non-PCT U.S. patent application, does not alter our minimum contacts analysis.

As for the second factor of our due process analysis, we conclude that Touchcom's claims of malpractice undoubtedly arise out of appellees' activities with an agency of the United States. Appellees argue that Touchcom's claims are based upon an error committed in the filing of a PCT application, not the U.S. application, and therefore do not arise out of contacts with the United States. We disagree. Touchcom's

claims arise from their filing of an allegedly deficient U.S. application. Had appellees filed the erroneous PCT application but chosen not to file a national phase entry in the United States, Touchcom would not have such a claim. Thus, appellees' contacts arise out of activities within the United States that form the basis for the litigation in this case.

We now turn to the third prong in our analysis. After finding that a defendant's activities form the basis for the litigation and are sufficient to establish minimum contacts, a court must analyze whether exercising jurisdiction over a defendant based on those contacts would be reasonable and fair. See, e.g., Synthes, 563 F.3d at 1299. In determining whether exercising jurisdiction comports with "fair play and substantial justice," we consider five factors: "(1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive policies." Id. (citing Burger King, 471 U.S. at 477). These factors may "render jurisdiction unreasonable" despite the presence of minimum contacts. Burger King, 471 U.S. at 477.

The first factor in our analysis of fair play and substantial justice is the burden placed upon the defendant in having to litigate in the forum. "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." Asahi Metal Indus. Co. v. Super. Ct. of Cal., 480 U.S. 102, 114 (1987). However, we have recognized that "progress in communications and transportation has made the defense of a lawsuit in a foreign

tribunal less burdensome." <u>World-Wide Volkswagen v. Woodson</u>, 444 U.S. 286, 294 (1980) (quotation marks omitted).  That is especially true in this case in which appellees are being required to travel only from near Toronto to Alexandria, Virginia, a distance of approximately 500 miles.  <u>See</u> <u>Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.</u>, 297 F.3d 1343, 1356 (Fed. Cir. 2002) (finding the burden on a Canadian defendant subject to suit in Kansas was "relatively minimal").  Also, in <u>Synthes</u> we held that requiring a Brazilian defendant to travel to the United States from Brazil in order to defend against a patent infringement suit was "not unduly burdensome."  <u>Synthes</u>, 563 F.3d at 1299.  The present case involves travel that is much less burdensome than a Brazil-United States journey.  Flights from Toronto to the Washington D.C. area are routine and frequent.  Furthermore, appellees in this case are attorneys who are at least familiar enough with U.S. law to be registered as non-resident patent agents and eligible to practice before the USPTO.  Appellees, as U.S. registered patent agents, may well have other business with the USPTO.  In light of the relatively short travel time required and appellees' seeming familiarity with the U.S. legal system, we conclude that the burden on appellees in defending this case in the United States is minimal.

Next, we analyze the forum's interest in adjudicating the dispute.  Although this dispute is between Canadian citizens, the United States has an interest in regulating malpractice occurring at the USPTO regardless of the nationalities involved.  The United States also has a legitimate interest in providing an adjudicatory forum for claims of malpractice occurring before its federal agencies.  This factor thus does not indicate that exercising personal jurisdiction over appellees would be a constitutional violation.

As for the third prong of the fairness inquiry—the plaintiff's interest in obtaining relief in the chosen forum—Touchcom's interest in obtaining relief in a U.S. court is also minimal. Both U.S. and Canadian courts could equally provide the relief that Touchcom seeks. This factor is therefore neutral.

The fourth and fifth factors, to the extent they apply, do not convince us that exercising jurisdiction over appellees would violate notions of fair play and substantial justice. "Both factors are concerned with the potential clash of substantive social policies between competing fora and the efficiency of a resolution to the controversy." Synthes, 563 F.3d at 1300 (citing Burger King, 471 U.S. at 477). As for the fourth factor, the United States does not appear to be any less efficient a forum in which to adjudicate this dispute. Aspects of U.S. patent law will be required to prove causation in this case regardless whether it is adjudicated in the United States or Canada. While both parties appear to believe that Canadian law will govern the substantive malpractice action, it is not entirely clear to us that that is the case. It appears that under Virginia's choice of law rules, the law of the forum where the wrongful act occurred governs tort claims. Jones v. R.S. Jones & Assocs., Inc., 431 S.E.2d 33, 34 (Va. 1993). In spite of appellees' arguments to the contrary, the alleged wrongful act presumably occurred in Virginia where the appellees' patent application was filed; thus, it would appear that Virginia law would govern the malpractice action. In such a case, the United States would be the most efficient forum for adjudicating this dispute. Even if Canadian law does govern the malpractice action, either forum would have to apply foreign law. In such a case, this prong would not favor either party.

Regarding the fifth factor, the United States has a cognizable policy interest in

regulating the practice of foreign attorneys that appear before the USPTO. Of course, Canada has an interest in regulating contracts entered into between its citizens. Thus, this factor also does not favor either party. Such a conclusion does not suggest that due process would be offended by the exercise of jurisdiction over appellees. In light of appellees' minimal burden in litigating this case in the United States and the United States' interest in and efficiency in adjudicating this dispute, we accordingly find that exercise of jurisdiction in this case comports with due process.

In summary, appellees' contacts with the United States indicate that appellees "purposefully avail[ed]" themselves of the privilege of conducting business in the United States. Those contacts form the basis for the present action. We therefore conclude that appellees' contacts with the United States are sufficient to meet the "minimum contacts" standard articulated in International Shoe. Furthermore, exercise of personal jurisdiction over appellees in this case would not offend traditional notions of fair play and substantial justice. The present action was filed in Virginia and no other state appears to have a superior claim to jurisdiction. We therefore find that Touchcom has shown a prima facie case of personal jurisdiction in the U.S. District Court for the Eastern District of Virginia pursuant to Rule 4(k)(2).

C.    Statute of Limitations

As an alternative to their jurisdictional argument, appellees argue that Touchcom's claims should be dismissed under Fed. R. Civ. P. 12(b)(6) because they are barred by Virginia's three-year statute of limitations. Because the district court did not decide that issue, we remand the case for the court to rule on that issue in the first instance.

CONCLUSION

Because the district court possessed personal jurisdiction over appellees, we reverse the court's dismissal.  We remand the case for proceedings consistent with this opinion.

REVERSED AND REMANDED

# United States Court of Appeals for the Federal Circuit

2008-1229

TOUCHCOM, INC.
and TOUCHCOM TECHNOLOGIES, INC.,

Plaintiffs-Appellants,

v.

BERESKIN & PARR
and H. SAMUEL FROST,

Defendants-Appellees.

Appeal from the United States District Court of the Eastern District of Virginia in case no. 1:07-CV-114, Senior Judge James C. Cacheris.

PROST, Circuit Judge, dissenting.

I agree with the majority's discussion of Rule 4(k)(1)(A) and its treatment of the first two requirements for personal jurisdiction to be proper under Rule 4(k)(2). I also agree that the Appellees have minimum contacts with the United States as a whole and that Touchcom's cause of action arises out of those contacts. However, in my view, this case presents one of the "rare situations" in which minimum contacts are present but exercising personal jurisdiction would nevertheless violate due process because "the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1568 (Fed. Cir. 1994). I therefore respectfully dissent.

As the majority notes, a court cannot exercise jurisdiction if doing so "would offend traditional notions of fair play and substantial justice." Asahi Metal Indus. Co. v. Super. Ct. of Cal., 480 U.S. 102, 113 (1987) (quotation marks omitted). In determining

whether the assertion of jurisdiction over a defendant is reasonable, we consider five factors: (1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive social policies. <u>Synthes (U.S.A.) v. G.M. dos Reis Jr. Ind. Com. de Equip. Medico</u>, 563 F.3d 1285, 1299 (Fed. Cir. 2009) (citing <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 477 (1985)). We must also be mindful of the Supreme Court's admonition that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." <u>Asahi</u>, 480 U.S. at 115 (quoting <u>United States v. First Nat'l City Bank</u>, 379 U.S. 378, 404 (1965) (Harlan, J., dissenting)).

With respect to the first factor, the majority concludes that the burden on the Appellees in this case is "minimal" because modern transportation and communication technologies make travel between Toronto, Ontario and Alexandria, Virginia less burdensome than it has been in the past. <u>See</u> Majority Op. at 20-21 (citing <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 294 (1980), and <u>Synthes</u>, 563 F.3d at 1299). Additionally, the majority suggests that the Appellees, who are residents of Canada, have some familiarity with the United States legal system by virtue of their status as patent agents who are eligible to practice before the United States Patent and Trademark Office ("USPTO"). I respectfully disagree that subjecting the Appellees to suit in the United States is a "minimal" burden.

Traveling the approximately 500 miles from the Appellees' office near Toronto to Alexandria is no doubt manageable as a logistical matter. Nevertheless, "[i]t goes without saying that '[a]dditional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which [the] fact witnesses must be away from their regular employment.'" In re TS Tech USA Corp., 551 F.3d 1315, 1320 (Fed. Cir. 2008) (quoting In re Volkswagen AG, 371 F.3d 201, 205 (5th Cir. 2004)) (second and third alterations in original).

Additionally, the burden on the Appellees is not merely the travel time. For example, I do not think we would assume that it is less burdensome for a resident of Buffalo, New York to litigate in Toronto rather than New York City even though Toronto is over 250 miles closer. Regardless of the ease of travel, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." Asahi, 480 U.S. at 114.

I also disagree with the majority's assertion that the Appellees' eligibility to practice before the USPTO gives them a special familiarity with United States law. Under the applicable rules, an applicant for registration before the USPTO need not demonstrate any general understanding of our country's legal system. See 37 C.F.R. §§ 11.6(c), 11.7(a). Moreover, the majority identifies no basis for its conclusion that the knowledge and skills necessary to prosecute patents before a government agency would tend to provide familiarity with malpractice litigation before a jury in a trial court.

Admittedly, the task of quantifying the burden on a particular defendant in a particular case and formulating a linguistic description of that burden is not amenable to precision. See, e.g., Asahi, 480 U.S. at 114 (litigating in California was a "severe" burden for Japanese defendant); Synthes, 563 F.3d at 1299 (litigating in California was a "significant" burden for Brazilian defendant); Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovation Found., 297 F.3d 1343, 1356 (Fed. Cir. 2002) (defendant's status as a Canadian corporation was "not insignificant," but the burden of subjecting it to litigation in Kansas was "relatively minimal"); Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 617 (5th Cir. 2008) (litigating in Texas was a "severe" burden for Canadian defendant); Benton v. Cameco Corp., 375 F.3d 1070, 1079 (10th Cir. 2004) (litigating in Colorado was a "significant" burden for a Canadian corporation). However, it is sufficient to resolve this case to recognize that it will be fairly burdensome for the Canadian Appellees to hire foreign lawyers to defend them in a trial before foreign jurors in a foreign court that will be governed by foreign procedural rules and, potentially, other more substantive foreign laws. See, e.g., Majority Op. at 22 (suggesting that Virginia choice-of-law rules might be applied). This is so because even if these burdens are not viewed as overwhelming, they nevertheless outweigh the competing interests in having the case decided in the United States.

With respect to the second factor in the analysis, I consider the United States' interest in adjudicating this dispute to be minimal. Most importantly, neither Touchcom nor the Appellees are citizens or residents of the United States. See Asahi, 480 U.S. at 114 ("Because the plaintiff is not a California resident, California's legitimate interests in the dispute have considerably diminished."). Moreover, as foreign patent agents, the

Appellees are not permitted to represent United States citizens before the USPTO. 37 C.F.R. § 11.6(c). Thus, the United States can claim no interest in protecting its own citizens from negligent representation before the USPTO.

As a general matter, the majority is correct that "the United States has an interest in regulating malpractice occurring at the USPTO regardless of the nationalities involved." Majority Op. at 21. However, the due process analysis must be conducted on a case-by-case basis. See Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 445 (1952). In this case, the alleged malpractice consists of the Appellees' act of submitting a patent application to the USPTO that could not result in the issuance of a valid patent because it lacked the source code necessary to satisfy the definiteness requirement of 35 U.S.C. § 112. In my view, the United States' interest in discouraging this type of negligence by omission is adequately protected by the USPTO's authority to reject claims that suffer from this type of defect. See Manual of Patent Examining Procedure § 2181 (8th ed., July 2008 rev.). Additionally, USPTO regulations provide for discipline of attorneys who do not represent their clients competently. See 37 C.F.R. §§ 10.20, 10.77, 11.19. While it is regrettable that the USPTO issued an invalid patent to Touchcom, opening our courts to this lawsuit will contribute little to the United States' existing ability to encourage patent attorneys and agents to submit proper applications to the USPTO.

Turning to the third factor, I agree with the majority that Touchcom's interest in obtaining relief in a United States court is minimal because a Canadian forum is available. Accordingly, I do not believe that this factor supports the exercise of personal jurisdiction in this case.

The majority notes that the fourth and fifth factors—the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the states in furthering fundamental substantive social policies—"are concerned with the potential clash of substantive social policies between competing fora and the efficiency of a resolution to the controversy." Majority Op. at 22 (quoting Synthes, 563 F.3d at 1300). In the majority's view, these factors did not favor either party.

With respect to the fourth factor, the majority concludes that the United States and Canada would be equally efficient fora because the suit would likely implicate at least some of the laws of each nation. I generally agree, subject to the observation that leaving the adjudication of malpractice claims between foreign parties to the fora in which they both reside would spread the demand on judicial resources more evenly across the globe rather than centralizing it in the United States.

Finally, I believe that the interest of the fora in furthering fundamental substantive social policies counsels against our exercise of jurisdiction. It is true that the United States has a policy interest in regulating foreign patent agents who appear before the USPTO. However, as discussed above, the exercise of jurisdiction in this case would only marginally further that interest. The United States' interest must be balanced against Canada's interest in this dispute, which I submit is more significant. First, as the majority recognizes, Canada has an interest in regulating contracts entered into between Canadian citizens. Second, the magnitude and availability of damages for professional malpractice will affect the quality and price—and, accordingly, accessibility—of professional services. Balancing the competing policy considerations

can be controversial and is best left to the forum in which the services are sought and provided.

In sum, it is my view that a weighing of the factors identified by the Supreme Court demonstrates that exercising jurisdiction over the Appellees in this case is unreasonable. Accordingly, I respectfully dissent.