# United States Court of Appeals for the Federal Circuit

2009-1472

BRADFORD COMPANY,

Plaintiff-Appellant,

v.

CONTEYOR NORTH AMERICA, INC.,

Defendant,

and

CONTEYOR MULTIBAG SYSTEMS N.V.,

Defendant-Appellee.

Gregory F. Ahrens, Wood, Herron & Evans, LLP, of Cincinnati, Ohio, argued for plaintiff-appellant. With him on the brief were Bruce Tittel and John P. Davis.

Robert J. Lenihan, II, Harness, Dickey & Pierce, PLC, of Troy, Michigan, argued for defendant-appellee. With him on the brief were Michael E. Hilton and Allen E. Pittoors.

Appealed from: United States District Court for the Southern District of Ohio

Senior Judge Sandra S. Beckwith

# United States Court of Appeals for the Federal Circuit

2009-1472

BRADFORD COMPANY,

Plaintiff-Appellant,

v.

CONTEYOR NORTH AMERICA, INC.,

Defendant,

and

CONTEYOR MULTIBAG SYSTEMS N.V.,

Defendant-Appellee.

Appeal from the United States District Court for the Southern District of Ohio in Case No. 05-CV-00449,Senior Judge Sandra S. Beckwith.

_____

DECIDED:  April 29, 2010

_____

Before LOURIE, CLEVENGER, and RADER Circuit Judges.

LOURIE, Circuit Judge.

Bradford Company ("Bradford") appeals from the judgment of the United States District Court for the Southern District of Ohio granting summary judgment to ConTeyor North America, Inc. ("ConTeyor NA") of noninfringement of certain claims of U.S. Patents 6,230,916 ("the '916 patent") and 6,540,096 ("the '096 patent").[1]  Bradford also appeals from the court's grant of summary judgment that the '096 patent claims were

---

[1]       See Bradford Co. v. Afco Mfg., 628 F. Supp. 2d 756 (S.D. Ohio 2007) ("Noninfringement Opinion"); Bradford Co. v. Afco Mfg., No. 05-449, 2006 WL 3500009 (S.D. Ohio Dec. 5, 2006) ("Claim Construction Opinion").

not entitled to an earlier filing date,[2] and the court's dismissal of the foreign defendant, ConTeyor Multibag Systems N.V. ("ConTeyor NV"), for lack of personal jurisdiction.[3] For the reasons discussed below, we affirm in part, reverse in part, and remand.

BACKGROUND

Bradford owns the '916 patent, the '096 patent, and U.S. Patent 5,725,119 ("the '119 patent"). The '916 patent was issued from a divisional application of Bradford's original application that issued as the '119 patent. The '096 patent is a continuation-in-part of the '916 patent. The patents relate to shipping containers used to ship automobile door panels and related parts. The containers include "dunnage," which is a collection of pouches that hold parts, and are designed such that both the container and the collapsible dunnage structure can be easily re-erected and reused for multiple shipments. The containers are easily returned to shippers in a collapsed condition. According to Bradford the ability to reuse containers lowers freight, handling, and storage costs. Bradford sells the patented containers commercially under the name AdaptaPak.

Bradford's inventors, Donald Bazany and Judson Bradford, filed the application that became the '096 patent on May 31, 2000. On February 26, 2001, the examiner rejected all of the claims as being anticipated by Bradford's own '119 patent under 35 U.S.C. § 102(b). Bradford responded by amending the "related applications" section to incorporate by reference the '119 patent, and claiming the benefit of the '119 patent's

---

[2]     See Bradford Co. v. Afco Mfg., No. 05-449, 2008 WL 974043 (S.D. Ohio Apr. 8, 2008) ("Priority Opinion").

[3]     See Bradford Co. v. Afco Mfg., 560 F. Supp. 2d 612 (S.D. Ohio 2008) ("Personal Jurisdiction Opinion").

filing date.[4] The examiner, however, rejected the claims once again, this time under the doctrine of obviousness-type double patenting. The examiner asserted that the '096 patent claims were obvious in light of Bradford's own '119 patent in combination with U.S. Patent 4,798,304 ("the Rader patent"). The examiner suggested that the rejection could be overcome by filing a terminal disclaimer for the '096 patent. Bradford responded by arguing that the references cited by the examiner did not render the '096 patent claims obvious, specifically that they did not teach a container with an opening on the side to allow access to the dunnage structure. Following Bradford's response, the examiner once again rejected the claims as being obvious in light of Bradford's own '119 patent in combination with U.S. Patent 4,798,304 ("Kupersmit"). In 2002, after arguing the examiner's rejections multiple times, Bradford eventually filed a terminal disclaimer, giving up a portion of the '096 patent term.

In 2005, Bradford sued ConTeyor NV of Belgium and its United States subsidiary, ConTeyor NA, in the United States District Court for the Southern District of Ohio, alleging infringement of all three of its patents. ConTeyor NV has had various business dealings with companies in the United States, including Bradford. The ConTeyor companies together sell shipping containers that also include collapsible dunnage.

All of the asserted claims of the three Bradford patents require that the dunnage be "coupled to" the frame or the side structure of the container. Claim 1 of the '916 patent reads as follows:

A reusable and returnable rack container for supporting a product thereon

---

[4] The '119 patent application was filed on February 28, 1996 and issued on March 10, 1998.

during shipment and subsequently being returned generally empty of product for reuse comprising:

a frame having a top member, a bottom member and a plurality of legs extending therebetween, the legs configured for being movable between an erected position for spacing the top member above the bottom member to support a product placed on the rack and a collapsed position for collapsing and reducing the size of the rack container for return;

the legs being hinged along their respective lengths for being folded into the collapsed position;

a dunnage structure supported by the frame for receiving a product placed on the rack for shipment when the legs are in an erected position;

the dunnage structure operable for relaxing when the legs are in a collapsed position such that the dunnage structure is generally positioned on the reduced size rack structure for return;

the dunnage structure movably <u>coupled to</u> the frame and operable for being moved with respect to said erected frame to vary the position of the dunnage structure and the received product within the container;

whereby the rack provides reusable dunnage which is usable with the container when it is shipped and subsequently remains with the container when it is returned for being reused when the container is again shipped.

'916 patent col.17 ll.37–63 (emphasis added). Additionally, the '096 patent claims an opening on the side of the container to allow access to the dunnage. Claim 1 of the '096 patent reads as follows:

A reusable and returnable container for holding product therein during shipment and then being returned for reuse, the container comprising:

a body having at least two opposing and moveable side structures, the side structures configured for being selectively moved into an erected position for shipment and moved into a collapsed position for reducing the size of the container for return;

a dunnage structure spanning between the side structures, the dunnage structure being operably <u>coupled to</u> the side structures for automatically moving, with the side structures, to an erected position for receiving product when the side structures are erected and moving to a collapsed position in the body when the side structures are collapsed so that the

dunnage remains with the container when returned;

the dunnage structure having an <u>open end facing at least one side structure</u> of the body, the <u>at least one side structure defining an open area</u> which is in alignment with the dunnage structure open end <u>for accessing the dunnage structure</u> and transferring product into and out of the dunnage structure from a side of the container;

whereby a person may more efficiently and safely remove product from the container and the container and dunnage is readily reused.

'096 patent col.13 ll.26–50 (emphasis added).

In December 2006, the district court construed claims of all three patents at issue. See Claim Construction Opinion, 2006 WL 3500009. In its claim construction, the court found the claim term "coupled to" to mean "linked together, connected or joined." Id. at *9. The court gave the term "coupled to," and related terms, the same meaning across all asserted claims of the three patents. For example, where the claims of the '096 patent used the phrase "operably coupled to the side structures," the court construed that term "operably coupled" as having the same meaning as the term "coupled to," which it had previously construed. Id. at *27.

In December 2007, the district court granted summary judgment of noninfringement of the '916 and '096 patents. Noninfringement Opinion, 628 F. Supp. 2d at 764. The '916 patent depicts an embodiment of the dunnage structure coupled to the frame of the container at Figure 1, and in further detail in Figure 1A, both reproduced below:



FIG. I

FIG. IA

Prior to their motion for summary judgment of noninfringement, the ConTeyor defendants had moved the district court to grant summary judgment of invalidity for all three Bradford patents. Although in its claim construction order the district court had construed the term "coupled to" uniformly across the three patents to broadly mean "linked together, connected or joined," <u>Claim Construction Opinion</u>, 2006 WL 3500009,

at *9, in its subsequent ruling on the ConTeyor defendants' invalidity motion, the court had held that the asserted claims were not anticipated by prior art containers in which the dunnage is coupled to support bars or support rails, Bradford Co. v. Afco Mfg., No. 05-449, 2007 U.S. Dist. LEXIS 31975 (S.D. Ohio May 1, 2007) ("Invalidity Opinion"). In granting ConTeyor summary judgment of noninfringement, the court relied upon that earlier decision on invalidity for the meaning of the term "coupled to." Noninfringement Opinion, 628 F. Supp. 2d at 764. In effect, the court ruled that the term "coupled to" was restricted to a direct coupling. Notably, neither party had previously proposed that construction to the court. Each of the asserted claims requires that the dunnage structure be "coupled to" either the "frame," the "open frame," or the "side structure" of the container. Id. at 762. Finding that the dunnage structure of the accused ConTeyor product was linked or connected to bars or rails and not directly to a "frame," "open frame," or "side structure," the court concluded that the accused product did not infringe claims 1, 4, and 5 of the '916 patent or claims 1, 4, 10, 11, and 19 of the '096 patent. Id. The dispute and the court's ruling were solely on the issue of literal infringement. Id. at 758 n.1.

Following its noninfringement decision, in April 2008, the district court ruled on the priority date of the '096 patent. See Priority Opinion, 2008 WL 974043. Bradford had argued that the filing date of the '119 patent, February 28, 1996, was also the effective filing date of the '096 patent. The parties disputed whether there was sufficient disclosure in the '119 patent of the claimed container's side-loading ability. Each of the claims of the '096 patent includes a limitation requiring an open end on the side of the container that allows access to the dunnage structure. Bradford had argued to the

district court that the '119 patent depicts an embodiment of the side-loading container at Figures 4 and 5, one of which is reproduced below:



FIG.4

While the district court agreed that the container depicted in the '119 patent could be loaded from the side, it found this disclosure insufficient to teach a side-loading container so as to satisfy section 112, first paragraph. Id. at *8 (citing 35 U.S.C. § 112). Moreover, the court noted, in prosecuting the '096 patent, Bradford had specifically told the examiner that the '119 patent did not teach the side-loading container claimed in the '096 patent. Id. at *9. Relying mostly on Bradford's prosecution history comments, the court concluded that the '096 patent was not entitled to the filing date of the '119 patent. The court therefore granted ConTeyor NA's motion, which effectively restricted Bradford's infringement claim to a later filing date for the '096 patent. Id. at *10.

Finally, in May 2008, the district court found that it could not exercise personal jurisdiction over the foreign defendant ConTeyor NV. Personal Jurisdiction Opinion, 560 F. Supp. 2d at 612. The court also rejected Bradford's argument that jurisdiction

over ConTeyor NV existed under either prong of Rule 4(k).  Id. at 635.  The court found that ConTeyor NV's connections to Ohio and Michigan were insufficient to allow the court to exercise jurisdiction over the defendant consistent with due process.  Id.  The court therefore granted ConTeyor NV's motion to dismiss.  Id.

Bradford now appeals.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

### A. Priority Date for the '096 Patent

In denying Bradford an earlier priority date for the '096 patent, Bradford argues, the district court improperly relied on a single prosecution remark made by Bradford's attorney to the effect that the '119 patent did not disclose side-loading containers. Bradford contends that that, however, was an incorrect statement that should not have been made to the examiner.  Regardless, Bradford argues, the argument was never accepted by the examiner and was thereafter abandoned by the attorney prosecuting the '096 patent.  Moreover, Bradford points to the examiner's initial section 102 rejection as evidence of the examiner's belief that the '119 patent disclosed every limitation of the '096 patent claims including the side-loading feature.  Bradford also contends that the inventor as well as ConTeyor NA's own expert have testified that there is sufficient disclosure of that claim limitation in the '119 patent.  Hence, Bradford argues, it was improper for the court to overlook all of that evidence in favor of a single prosecution remark.

ConTeyor NA and ConTeyor NV do not respond to Bradford's arguments on this issue.  In fact, ConTeyor NA has not entered an appearance in this appeal at all. ConTeyor NV has limited its response to the issue of personal jurisdiction.

We review a grant of summary judgment de novo, drawing all reasonable factual inferences in favor of the non-moving party. See Invitrogen Corp. v. Biocrest Mfg. L.P., 424 F.3d 1374, 1378 (Fed. Cir. 2005). We apply our own law with respect to issues of substantive patent law and certain procedural issues pertaining to patent law, but apply the law of the regional circuits on non-patent issues. Id. Determination of a priority date is purely a question of law if the facts underlying that determination are undisputed. See E.I. du Pont de Nemours & Co. v. MacDermid Printing Solutions, L.L.C., 525 F.3d 1353, 1359 (Fed. Cir. 2008). However, determination whether a priority document contains sufficient disclosure to comply with the written description aspect of 35 U.S.C. § 112, first paragraph, is a question of fact. Waldemar Link v. Osteonics Corp., 32 F.3d 556, 558 (Fed. Cir. 1994).

Although we will affirm the district court's decision, we do agree with Bradford, at least to the extent that a genuine issue of fact exists as to whether the '119 patent contains a sufficient disclosure of a side-loading container. Although the court noted that most of the drawings of the '119 patent depict containers that can be loaded only from the top, it also acknowledged that "[t]here is no question that, as shown in Figures 4 and 5 [of the '119 patent], the container can be loaded from the side." Priority Opinion, 2008 WL 974043, at *9 (emphasis added). The court concluded, however, that even though it would have been obvious to side load the containers shown in the specification, that did not mean that a side-loading container was sufficiently disclosed. See id. (citing Lockwood v. Am. Airlines, Inc., 107 F.3d 1565, 1572 (Fed. Cir. 1997)).

In Lockwood, we made clear that in order to gain the benefit of the filing date of an earlier application under 35 U.S.C. § 120, each application in the chain leading back

to the earlier application must comply with the written description requirement of 35 U.S.C. § 112. Lockwood, 107 F.3d at 1571. That, we explained, requires that the earlier application describe the later claimed invention, and do so in sufficient detail that one skilled in the art can clearly conclude that the inventor was "in possession" of the claimed invention as of the filing date sought. Id. at 1572 (citing Vas-Cath Inc. v. Mahurkar, 935 F.2d 1555, 1563–64 (Fed. Cir. 1991)); see also Ariad Pharms., Inc. v. Eli Lilly & Co., No. 2008-1248, 2010 WL 1007369, at *12 (Fed. Cir. Mar. 22, 2010) (en banc) (explaining that possession requires that the specification "describe an invention understandable to [a] skilled artisan and show that the inventor actually invented the invention claimed"). Here, the district court agreed that the two figures in the earlier '119 patent application show dunnage that can be accessed from the side, and we believe that that might have sufficed as a sufficient description of the claimed side-loading limitation had the applicant not indicated otherwise during prosecution. See Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc., 291 F.3d 1317, 1322 (Fed. Cir. 2002) (citing Vas-Cath, 935 F.2d at 1566) ("Drawings constitute an adequate description if they describe what is claimed and convey to those of skill in the art that the patentee actually invented what is claimed."); see also Eiselstein v. Frank, 52 F.3d 1035, 1038 (Fed. Cir. 1995) (explaining that "the prior application need not describe the claimed subject matter in exactly the same terms as used in the claims").

However, we also agree with the district court that Bradford is estopped from arguing for an earlier priority date for the '096 patent by the prosecution history of that patent. In one of his earlier rejections, the examiner rejected the claims as obvious in light of the '119 patent combined with the Rader patent. The examiner specifically

stated that the Rader patent taught a "side wall having [an] opening." In response, Bradford told the patent examiner that the '119 patent did not teach the very feature that makes the invention of the '096 patent side loading. Specifically, Bradford argued that the '119 patent "clearly does not teach a dunnage structure having an open end which is in alignment with an open area of a side structure to allow access of the dunnage structure for transferring product into and out of the dunnage structure from a side of the container." Bradford further argued that when combined with the side opening taught by the Rader patent, the '119 patent would still not render the '096 patent claims obvious. Bradford's arguments were apparently successful. In the next office action, the examiner relied on a different prior art reference, Kupersmit, in rejecting the claims as obvious.

The applicants' statement to the examiner is a compelling disclaimer of scope such that the '096 patent is not entitled to an earlier priority date. See Microsoft Corp. v. Multi-Tech Sys., Inc., 357 F.3d 1340, 1350 (Fed. Cir. 2004) ("We take the patentee at its word and will not construe the scope of . . . [a] patent's claims more broadly than the patentee itself clearly envisioned."). That is because arguments made to persuade an examiner to allow an application trump an ambiguous disclosure that otherwise might have sufficed to obtain an earlier priority date. See Standard Oil Co. v. Am. Cyanamid Co., 774 F.2d 448, 452 (Fed. Cir. 1985) (holding that any argument made to convince the examiner of the patentability of the claimed invention "limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance"). We therefore affirm the court's decision limiting the priority date of the '096 patent to its own filing date.

B.  Noninfringement of the '096 and '916 Patents

Bradford argues that the district court erred in its construction of the term "coupled to" and related terms by requiring that the dunnage structure of the claimed containers be attached directly to the frame or side structures of the containers. Bradford points out that both the '916 patent and '096 patent, by incorporation of the '119 patent, clearly disclose dunnage attached to a rail, which is attached to a side structure, and that nothing in the specification requires dunnage to be directly attached to the container frame.  On the contrary, Bradford argues, given that dependent claim 10 of the '096 patent recites dunnage indirectly fixed to the frame through a rail, the doctrine of claim differentiation mandates a reading of the term "coupled to" as not limited to directly attached.  ConTeyor NA and ConTeyor NV do not respond to Bradford's arguments on this issue.

We agree with Bradford that the district court erroneously construed the term "coupled to," and we hold that the term should be construed broadly so as to allow an indirect attachment.  We review claim construction de novo on appeal.  Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc).  We begin a claim construction analysis by considering the language of the claims themselves.  See Phillips v. AWH Corp., 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc).  However, "claims must be read in view of the specification, of which they are a part." Id. at 1315 (quotation marks omitted).  "[A] court should also consider the patent's prosecution history, if it is in evidence. . . .  Like the specification, the prosecution history provides evidence of how the [Patent Office] and the inventor understood the patent." Id. at 1317 (citations and quotation marks omitted).

Although it properly gave the term "coupled to" a broad construction in its earlier order, the district court appears to have unnecessarily narrowed it in ruling on defendants' invalidity contentions. Invalidity Opinion, 2007 U.S. Dist. LEXIS 31975, at *25 (holding that a prior art reference that showed that the dunnage structure coupled to support bars was different from the '916 patent claims, which required dunnage coupled to the frame of the container). Thereafter, the court determined that its invalidity decision mandated that the term "coupled to" be restricted to a direct attachment to the frame or side structure of the container. Noninfringement Opinion, 628 F. Supp. 2d at 762–64 (basing its noninfringement finding on the fact that in its invalidity decision, the court had held that the "patents-in-suit do not encompass containers in which the dunnage is coupled to support bars or support rails"). Given that the accused device uses bars or rails to hold the dunnage structure, the court concluded that, under its claim construction, there was no infringement of any of the asserted claims. Id. at 764.

We agree with Bradford that the doctrine of claim differentiation supports a reading that allows an indirect coupling of the dunnage to the frame of the container. Dependent claim 10 of the '096 patent recites a dunnage structure that is coupled to rails which in turn are coupled to the side structures. In light of a dependent claim that clearly states an indirect attachment of the dunnage structure, the scope of independent claim 1 is presumed to be broader to allow for other types of indirect attachments. See Comark Commc'ns, Inc. v. Harris Corp., 156 F.3d 1182, 1186 (Fed. Cir. 1998) ("The doctrine of claim differentiation create[s] a presumption that each claim in a patent has a different scope."). While the doctrine of claim differentiation, contrary to arguments regularly made in this court, is not a conclusive basis for construing claims, we find

nothing in the '096 patent specification or the prosecution history that would allow us to overcome its effect here. On the contrary, the '096 patent specification clearly discloses dunnage coupled to the side structure through a rail. '096 patent fig.3; id. at col.9 ll.24–31; see also '119 patent figs.1 & 1A. Similarly, the use of words such as "operably" and "movably" in the claims suggests that the dunnage structure is not fused to the frame, but rather attached flexibly allowing for intermediate parts between the frame and the dunnage structure such that the dunnage is operable or movable. In light of such clear disclosure in the patent, the term "coupled to" is entitled to a broader scope than the district court allowed. We therefore reverse the court's revised claim construction of the term "coupled to." Because the court based its noninfringement finding solely on its revised construction of that term, we remand the question of infringement to the district court for a determination using its original and correct claim construction.

C. Personal Jurisdiction over ConTeyor NV

Bradford argues that the district court erred in concluding that no personal jurisdiction existed over ConTeyor NV under Rule 4(k)(2).[5] Bradford notes that this court, like other regional circuits, has allowed district courts to exercise jurisdiction over a defendant who has sufficient contacts with the United States and who refuses to identify a state where the suit can be brought. See generally Touchcom, Inc. v. Bereskin & Parr, 574 F.3d 1403 (Fed. Cir. 2009). Bradford points out that ConTeyor NV never conceded personal jurisdiction over it in any state. Therefore, Bradford argues,

---

[5] Bradford does not appeal the district court's finding that no jurisdiction existed over ConTeyor NV in Ohio under Rule 4(k)(1), but has indicated it would not oppose a de novo finding of jurisdiction under that section of the rule. See Bradford's Principal Br. at 53 n.9. We do not choose to make a de novo finding on an issue Bradford has not argued.

ConTeyor NV should be held to its prior refusal to name a forum, thereby allowing this action to proceed in the Ohio court under Rule 4(k)(2). Bradford contends that the exercise of jurisdiction over ConTeyor NV in Ohio comports with due process in light of all of ConTeyor NV's contacts with the United States.

ConTeyor NV responds that this court had not decided Touchcom at the time the district court ruled on ConTeyor's motion to dismiss. Therefore, ConTeyor NV argues, it did not have an obligation to identify a forum where it may be subject to personal jurisdiction. Now it concedes that an alternate forum to bring suit against it exists in Michigan. Moreover, even in light of Touchcom, ConTeyor NV argues, jurisdiction over it anywhere else in the United States fails to comport with due process.

We agree with Bradford that personal jurisdiction over ConTeyor NV may exist either in Ohio or in Michigan under Rule 4(k) based on ConTeyor NV's acknowledgement in its briefing on appeal that it is subject to personal jurisdiction in Michigan. Rule 4(k)(2) provides that:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2). Thus, for a court to exercise personal jurisdiction over a defendant under that rule, the plaintiff's claim must arise under federal law, the defendant must not be subject to jurisdiction in any state's courts of general jurisdiction, and exercise of jurisdiction must comport with due process. Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico, 563 F.3d 1285, 1293–94 (Fed. Cir. 2009).

We conclude that the district court erred in declining to find jurisdiction over

ConTeyor NV under Rule 4(k)(2) because it found that Bradford had not demonstrated that ConTeyor NV had sufficient contacts with Ohio or Michigan, and that doing so would not comport with the due process requirements of the Constitution and federal law. Personal Jurisdiction Opinion, 560 F. Supp. 2d at 635. Having analyzed in detail ConTeyor NV's contacts with the state of Ohio and concluding that ConTeyor NV did not have "continuous and systematic" contacts with that state to allow personal jurisdiction over it, the court summarily found that that was also the case with ConTeyor's alleged Michigan contacts. Id. Thus, the court concluded that Bradford had failed to demonstrate personal jurisdiction in Ohio over ConTeyor NV under Rule 4(k)(2). Id.

Following the district court's decision, we addressed in another case when a district court may exercise jurisdiction over a foreign defendant under Rule 4(k)(2). Touchcom, 574 F.3d 1403. In Touchcom, we declined to adopt a requirement that in order to establish jurisdiction, a plaintiff must prove that a defendant was not subject to jurisdiction in any of the fifty states. Id. at 1415. Instead, we adopted the Seventh Circuit's approach that allows a district court to use Rule 4(k)(2) whenever a foreign defendant contends that he cannot be sued in the forum state and refuses to identify any other state where suit is possible. Id. Applying the rule in that case, we concluded that a Canadian law firm that had prosecuted a patent application at the United States Patent and Trademark Office had sufficient minimum contacts with the United States to satisfy due process and allow for personal jurisdiction under Rule 4(k)(2). Id. at 1418. Given that the defendant in that case had not conceded jurisdiction in another state, we concluded that the plaintiff had made a prima facie showing that a Virginia court

possessed personal jurisdiction over the defendant even though the defendant was not subject to Virginia's courts of general jurisdiction. Id.

The district court in this case similarly failed to analyze ConTeyor NV's contacts with the United States as a whole and imposed an improper burden on the plaintiff. Personal Jurisdiction Opinion, 560 F. Supp. 2d at 635 ("Plaintiff has not shown that the exercise of jurisdiction under Rule 4(k)(2) is proper."). Because the court made the same legal error that we subsequently found in Touchcom, we vacate the court's decision and remand the case to the district court to determine whether it is entitled to use Rule 4(k)(2) to assert jurisdiction over ConTeyor NV, whether ConTeyor NV has sufficient contacts with the United States as a whole and, if so, whether the case against ConTeyor NV should proceed in Ohio or Michigan.

## CONCLUSION

We have considered the parties' remaining arguments and do not find them persuasive. Accordingly, the judgment of the district court is

### AFFIRMED IN PART, REVERSED IN PART, and REMANDED

### COSTS

Costs to Bradford.