# United States Court of Appeals for the Federal Circuit

---

**ENANTA PHARMACEUTICALS, INC.,**
*Plaintiff-Appellant*

**v.**

**PFIZER INC.,**
*Defendant-Appellee*

---

2025-1427

---

Appeal from the United States District Court for the District of Massachusetts in No. 1:22-cv-10967-DJC, Judge Denise J. Casper.

---

Decided: June 23, 2026

---

BARBARA A. FIACCO, Foley Hoag LLP, Boston, MA, argued for plaintiff-appellant. Also represented by SPENSER ANGEL, TAYLOR ROSS DAVIS, STUART KNIGHT, DONALD ROSS WARE, JEREMY YOUNKIN.

DAVID M. KRINSKY, Williams & Connolly LLP, Washington, DC, argued for defendant-appellee. Also represented by NICHOLAS LOFTUS, BEN PICOZZI, THOMAS H.L. SELBY, JULIE TAVARES, CHRISTOPHER YEAGER.

---

Before LOURIE, BRYSON, and CHEN, *Circuit Judges*.

LOURIE, *Circuit Judge*.

Enanta Pharmaceuticals, Inc. ("Enanta") appeals from a decision of the United States District Court for the District of Massachusetts granting summary judgment that all claims of Enanta's U.S. Patent 11,358,953 ("the '953 patent") are invalid as anticipated by a public disclosure of a compound within the scope of its claims. *Enanta Pharms., Inc. v. Pfizer, Inc.*, No. 22-cv-10967-DJC, 2024 WL 5203036, at *9 (D. Mass. Dec. 23, 2024) ("*Decision*").[1] For the following reasons, we affirm.

## BACKGROUND

Enanta's '953 patent, which issued from a non-provisional application filed on November 9, 2021, is directed to compounds and methods of inhibiting coronavirus replication activity. '953 patent col. 1 ll. 16–20. Claim 1 is representative and recites:

1. A compound represented by Formula (VI-6a),

(VI-6a)

---

[1]    The parties do not specify which claims were invalidated. The district court determined that "[t]he '953 patent is . . . invalid for anticipation," *Decision*, 2024 WL 5203036, at *9, which we interpret as invalidating all claims of the patent.

or a pharmaceutically acceptable salt thereof, wherein

X is —CN; and

*A is optionally substituted $C_1$-$C_8$ alkyl* or optionally substituted heteroaryl.

'953 patent col. 110 ll. 40–60 (emphasis added).

The '953 patent states that it claims priority from Enanta's U.S. Provisional Patent Application 63/054,048 ("the '048 provisional"), which has a priority date of July 20, 2020. *See* J.A. 92–166 ('048 provisional). The '048 provisional and the '953 patent both provide a definition for the term "substituted" and list several dozen chemical compounds and moieties that qualify as "substituents." J.A. 127–28; '953 patent col. 69 l. 61–col. 71 l. 14. The definitions provided in both are substantially the same, but with one critical difference. The '048 provisional recites "—NHC(O)—$C_2$-$C_{12}$-alkyl," whereas the '953 patent recites "—NHC(O)—$C_1$-$C_{12}$-alkyl." J.A. 127; '953 patent col. 70 l. 22. The subscripted numbers identify the number of carbon atoms in the alkyl group: "$C_2$-$C_{12}$" denotes alkyl groups containing a range of two to twelve carbon atoms, while "$C_1$-$C_{12}$" additionally includes a one-carbon alkyl group.

On April 6, 2021, Pfizer Inc. ("Pfizer") made publicly available a presentation disclosing a protease inhibitor, nirmatrelvir, which was eventually incorporated into Pfizer's Paxlovid® product to treat coronavirus infection. *See* J.A. 2729–46. Nirmatrelvir has an "A" group substituted with a —NHC(O)—$C_1$-alkyl group. *See* J.A. 2740.

Enanta contends that, on July 9, 2021, it realized that the '048 provisional contained a typographical error: The "$C_2$" in —NHC(O)—$C_2$-$C_{12}$-alkyl in the '048 provisional really should have been a "$C_1$." Accordingly, on July 19, 2021, Enanta filed a non-provisional application, following several continuations one of which eventually issued as the '953 patent, and listed the relevant substituent as —

$NHC(O)$—$C_1$-$C_{12}$-alkyl, as opposed to —$NHC(O)$—$C_2$-$C_{12}$-alkyl that was listed in the '048 provisional.

In June 2022, Enanta sued Pfizer, alleging that Pfizer's Paxlovid® product infringed the claims of the '953 patent. J.A. 533–44. Pfizer counterclaimed that the '953 patent was invalid, and subsequently filed a motion for summary judgment that the asserted claims of the '953 patent were invalid as anticipated. *Decision*, 2024 WL 5203036, at \*1. Pfizer argued that the '953 patent could not claim priority from the '048 provisional because the '953 patent's disclosure of —$NHC(O)$—$C_1$-alkyl was not supported by the '048 provisional's disclosure of —$NHC(O)$—$C_2$-$C_{12}$-alkyl, and Pfizer's intervening disclosure of nirmatrelvir anticipated the asserted claims. *See* J.A. 2021–27. Enanta argued that the '953 patent is entitled to claim priority from the '048 provisional because Enanta's alteration to correct an obvious typographical error added no new matter not disclosed in the '048 provisional. *See* J.A. 4075–81.

The district court granted Pfizer's motion, concluding that the "$C_2$" in —$NHC(O)$—$C_2$-$C_{12}$-alkyl of the '048 provisional was not an obvious typographical error that it had the power to correct, and therefore the change from —$NHC(O)$—$C_2$-$C_{12}$-alkyl in the '048 provisional to —$NHC(O)$—$C_1$-$C_{12}$-alkyl in the '953 patent impermissibly broadened the scope of the patent such that the '953 patent was not entitled to priority from the '048 provisional. *Decision*, 2024 WL 5203036, at \*8. The district court thus concluded that Pfizer's disclosure of nirmatrelvir before the '953 patent's priority date anticipated the asserted claims. *Id.* at \*9.

Enanta timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review a district court's grant of summary judgment according to the law of the regional circuit, here, the

First Circuit, which reviews a grant of summary judgment *de novo*. *AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1295 (Fed. Cir. 2014) (citations omitted) (applying First Circuit law). "In order to prevail on a motion for summary judgment, the moving party must show 'that there is no genuine dispute as to any material fact' and that it 'is entitled to judgment as a matter of law.'" *OneBeacon Am. Ins. Co. v. Com. Union Assur. Co. of Can.*, 684 F.3d 237, 241 (1st Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000) (internal quotation marks and citation omitted). We apply Federal Circuit law to substantive issues of patent law. *ParkerVision, Inc. v. Qualcomm Inc.*, 116 F.4th 1345, 1356 (Fed. Cir. 2024).

We start with what this case is not. This case does not present the type of written description disputes addressed in cases such as *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336 (Fed. Cir. 2010) (en banc) and *In re Ruschig*, 379 F.2d 990 (CCPA 1967). The issue in *Ariad* was whether a patent specification provided adequate written description support for a broad genus claim. 598 F.3d at 1341, 1354–55. And the issue in *In re Ruschig* was whether a patent specification that disclosed a broad genus provided adequate written description support for a later-claimed species. 379 F.2d at 993–96. Here, in contrast, the dispute is whether there is adequate written description support in the '048 provisional's disclosure of —NHC(O)—$C_2$-$C_{12}$-alkyl for the '953 patent's disclosure of —NHC(O)—$C_1$-alkyl. That is, whether "2" provides adequate written description support for "1."

And, as we explained in *Lockwood v. American Airlines, Inc.*, the written description standard applies for purposes of priority. 107 F.3d 1565, 1571 (Fed. Cir. 1997). That is, "[i]n order to gain the benefit of the filing date of an earlier application under 35 U.S.C. § 120, each

application in the chain leading back to the earlier application must comply with the written description requirement of 35 U.S.C. § 112." *Id.* (citation omitted); *see also New Railhead Mfg., LLC v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1294 (Fed. Cir. 2002) ("[F]or [a] non-provisional utility application to be afforded the priority date of [a] provisional application, . . . the written description of the provisional must adequately support the claims of the non-provisional application.").

Furthermore, this case is unlike our line of cases concerning the correction of errors in issued patents, as argued by the parties and decided by the district court. In *In re Oda*, our predecessor court explained that the United States Patent and Trademark Office can reissue patents with corrections pursuant to 35 U.S.C. § 251 that add "[n]o new matter," so long as one of skill in the art would consider the error to be "obvious." 443 F.2d 1200, 1203–04 (CCPA 1971); *see* 35 U.S.C. § 251 (permitting the Patent Office to "[r]eissue . . . defective patents" with corrections). But this case is not before the Patent Office, and a change from $C_2$ to $C_1$ has not been shown here to be a correction of an obvious error.

And, in *Novo Industries, L.P. v. Micro Molds Corp.*, we explained that a district court can "correct an error in a patent by interpretation of the patent where no certificate of correction has been issued" only when "(1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." 350 F.3d 1348, 1354 (Fed. Cir. 2003). The instant case does not concern the power of a district court to correct an error in an issued patent, and, even if it did, the existence of an error in the '048 provisional is certainly "subject to reasonable debate." Thus, neither *Oda* nor *Novo* applies here.

As noted, the district court in this case determined that the '953 patent was not afforded the '048 provisional's filing date because there was no obvious typographical error in the '048 provisional that it had the power to correct, and the '953 patent therefore broadened the scope of the patent such that it could not claim priority from the '048 provisional. *Decision*, 2024 WL 5203036, at *6–8. Although the district court focused on its power to correct a purported typographical error and did not apply the written description standard, we proceed to do so. *See Slip Track Sys. v. Metal-Lite, Inc.*, 304 F.3d 1256, 1265 (Fed. Cir. 2002) ("[B]ecause this court reviews *de novo* a grant of summary judgment, it can apply the correct standard.").

There being no error shown in an issued patent here, the issue in this case is whether there was a genuine dispute of material fact as to whether the '048 provisional provided written description support for —NHC(O)—$C_1$-alkyl disclosed and claimed in the '953 patent. Enanta does not dispute that Pfizer's disclosure of nirmatrelvir anticipates the claims of the '953 patent if the '953 patent is not afforded a priority date before Pfizer's disclosure. *See generally* Opening Br. 1–61; Response Br. 23. Rather, Enanta argues that it presented a dispute of material fact, whether a skilled artisan would recognize the "$C_2$" in —NHC(O)—$C_2$-$C_{12}$-alkyl of the '048 provisional to be a typographical error and therefore provided adequate written description support for the '953 patent's disclosure of —NHC(O)—$C_1$-$C_{12}$-alkyl, and that the district court therefore erred in granting summary judgment. We disagree.

Whether the written description requirement of 35 U.S.C. § 112 is met in a given case is a question of fact. *Bradford Co. v. Conteyor N. Am., Inc.*, 603 F.3d 1262, 1268 (Fed. Cir. 2010). As noted, in order to be entitled to the priority date of an earlier-filed application, each application must comply with the written description requirement of § 112, which "requires that the earlier application describe the later claimed invention, and do so in sufficient

detail that one skilled in the art can clearly conclude that the inventor was 'in possession' of the claimed invention as of the filing date sought." *Id.* at 1269 (citation omitted).

We conclude that the '048 provisional does not convey to a skilled artisan that the inventors possessed —NHC(O)—$C_1$-alkyl at the time of the '048 provisional's filing date. The '048 provisional and the '953 patent recite two different ranges of chemical moieties. The former recites —NHC(O)—$C_2$-$C_{12}$-alkyl and the latter recites —NHC(O)—$C_1$-$C_{12}$-alkyl. $C_2$ is simply different from $C_1$, and the '048 provisional's disclosure of a range of $C_2$ to $C_{12}$ provides no support for the '953 patent's disclosure of $C_1$ because the '048 application explicitly includes an alkyl group with two to twelve carbon atoms (*i.e.*, —NHC(O)—$C_2$-$C_{12}$-alkyl), and notably does not include an alkyl group with one carbon atom (*i.e.*, —NHC(O)—$C_1$-alkyl).

Enanta argues that its expert's declaration creates a genuine dispute of material fact that it disclosed and possessed —NHC(O)—$C_1$-alkyl at the time the '048 provisional was filed. We disagree.

Enanta's expert points out that, before providing the definition for "substituted," the '048 provisional defines "alkyl" as "saturated straight- or branched-chain hydrocarbon radicals," and explains that "'$C_1$-$C_4$ alkyl,' '$C_1$-$C_6$ alkyl,' '$C_1$-$C_8$ alkyl,' '*$C_2$-$C_{12}$ alkyl*,' '$C_2$-$C_4$ alkyl,' or '$C_3$-$C_6$ alkyl,' refer to alkyl groups containing from one to four, one to six, one to eight, *one to twelve*, 2 to 4 and 3 to 6 carbon atoms respectively." J.A. 124 (emphasis added). That is, he asserts that there is an inconsistency between the listed "$C_2$-$C_{12}$ alkyl" using numerals 2 and 12 and the corresponding written numbers of "one to twelve . . . carbon atoms." And, according to Enanta's expert, "a person of ordinary skill in the art would understand that where there is a mismatch between a numeral and a written number, . . . the numeral is likely to contain [the] typographical error;" thus "the structure of the definition of 'alkyl' in the provisional

application confirms that the typographical error is in the phrase $C_2$-$C_{12}$ alkyl,' not the written number." J.A. 4270. The expert then opined that this typographical error in the definition of "alkyl" shows that any later use of "$C_2$-$C_{12}$ al-kyl" in the '048 provisional's specification, such as the disclosure of —NHC(O)—$C_2$-$C_{12}$-alkyl, was likely also a typographical error and should have been "—NHC(O)—$C_1$-$C_{12}$ alkyl." J.A. 4271.

Enanta's argument is unpersuasive because its expert points to a purported typographical error in the general definition of "alkyl," not in the specific disclosure of —NHC(O)—$C_2$-$C_{12}$-alkyl in the definition of "substituted." *Compare* J.A. 124 *with* J.A. 127. Although the expert also offers an opinion that "a person of ordinary skill in the art would understand that other references to '$C_2$-$C_{12}$ alkyl' . . . are likely to be erroneous as well," J.A. 4271, the expert points to nothing in the disclosure of —NHC(O)—$C_2$-$C_{12}$-alkyl in particular to show that a skilled artisan would understand the disclosed $C_2$-$C_{12}$ alkyl to provide support for $C_1$ alkyl.

As we have explained, "[e]ntitlement to a filing date . . . extends only to that which is disclosed," *Lockwood*, 107 F.3d at 1571–72, and —NHC(O)—$C_1$-alkyl was simply not disclosed in the '048 provisional. An expert opinion on a typographical error contained elsewhere in the '048 provisional does not render the former fact disputed. *Cf. id.* at 1572 ("It is not sufficient for purposes of the written description requirement of § 112 that the disclosure, when combined with the knowledge in the art, would lead one to speculate as to modifications that the inventor might have envisioned, but failed to disclose. Each application in the chain must describe the claimed features."); *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1332 (Fed. Cir. 2003) ("[E]xtrinsic evidence cannot be used to vary the plain language of the patent document."). There is no genuine issue of material fact here.

Enanta points to several other opinions of its expert for support that the $C_2$ in —NHC(O)—$C_2$-$C_{12}$-alkyl was likely to have been a typographical error. *See* Opening Br. 52–56. For example, Enanta's expert pointed out that "$C_1$-$C_{12}$ alkyl" is listed under the definition of "substituted," along with other substituents with a $C_1$ alkyl group, and a skilled artisan would therefore recognize that any substituent containing a "$C_2$-$C_{12}$ alkyl" group was a typographical error that should have been "$C_1$-$C_{12}$ alkyl." J.A. 4271. Again, these arguments do not concern the actual substituent at issue, and do not change the fact that the '048 provisional specifically discloses only —NHC(O)—$C_2$-$C_{12}$-alkyl. Indeed, the '048 provisional specification is highly detailed, providing dozens of specific chemical moieties presumably described with great care under the definition of "substituted." J.A. 127–28. We respect applicants' statements in their specification that they invented what was specifically disclosed in the '048 provisional, but similarly we conclude that they did not invent what they did not disclose.

The issue in this case is akin to asking whether a disclosure of ethanol, a two-carbon alcohol regularly consumed by people, would provide adequate written description support for methanol, a one-carbon alcohol that is highly toxic to people. That example illustrates why a disclosure of one chemical compound, or integer in this case, cannot necessarily be a disclosure of another, even one close by structurally.

The '048 provisional did not disclose —NHC(O)—$C_1$-alkyl. It therefore provided no written description support for the '953 patent, so the '953 patent cannot be afforded the '048 provisional's priority date. The district court therefore properly granted summary judgment that the '953 patent claims were anticipated by Pfizer's disclosure of nirmatrelvir.

CONCLUSION

We have considered Enanta's remaining arguments but find them unpersuasive. For the foregoing reasons, we affirm.

**AFFIRMED**